USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/29/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
HENRY T. CASON,

                Plaintiff,        11 Civ. 01 (DAB)
  -against-                              ORDER

CENTRAL INTELLIGENCE AGENCY,

                Defendant.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

    On February 28, 2012, United States Magistrate Judge Debra C. Freeman issued a Report and Recommendation ("Report"), recommending that Defendant Central Intelligence Agency's ("CIA") Motion for Summary Judgment be GRANTED and Plaintiff Henry Cason's Motion for Partial Summary Judgment be DENIED. (Report at 1.) For the reasons set forth below, after a _de novo_ review following Plaintiff's objections, the Report and Recommendation of Magistrate Judge Freeman dated February 28, 2012 shall be adopted in its entirety.

I.    Objections to the Report and Recommendation

    "Within fourteen days after being served with a copy [of a Magistrate Judge's Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); _accord_ 28 U.S.C. § 636(b)(1)(C). A district court must review _de novo_ "those

portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07-CV-6865, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); see also Ortiz v. Barkley, 558 F.Supp.2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (internal quotation marks omitted). After conducting the appropriate levels of review, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. 28 U.S.C. § 636(b)(1)(C).

Plaintiff has filed timely objections to Magistrate Judge Freeman's Report. Plaintiff objects to (i) the legal standard used in the Report to determine if FOIA permits a categorical rule of withholding; (ii) the Report's crediting of clarifications the CIA made in its reply papers; (iii) the finding that the CIA's *Glomar* response was proper under Exemption

1; and (iv) the failure to analyze whether the CIA properly invoked the *Glomar* doctrine under Exemption 3. The Court takes each of these in turn here, applying a <u>de novo</u> review as appropriate to the specific objections.

II. Portions Of The Report To Which No Objection Was Made

The court may adopt those portions of the report to which no timely objection has been made, as long as there is no clear error on the face of the record. <u>Wilds v. United Parcel Serv., Inc.</u>, 262 F.Supp.2d 163, 169 (S.D.N.Y. 2003). Plaintiff here has filed timely objections to Judge Freeman's Report but has not objected to the Report's findings concerning the redactions to the 1952 Opus Dei in Barcelona Report. (Report at 26-28.) Having reviewed the Report finding no clear error on the face of the record, the Court adopts the Report's findings and recommendations as they pertain to the redactions to the 1952 Report.

III. Legal Standard to Determine Whether FOIA Permits a
     Categorical Rule of Withholding

In his Motion for Partial Summary Judgment, Plaintiff argued that the CIA's categorical *Glomar* policy with regard to requests for information about foreign organizations is overbroad and

3

violates the Freedom of Information Act ("FOIA").[1] Plaintiff objects that the Report failed to recognize and apply what Plaintiff deems "the governing legal standard to determine whether the CIA's categorical *Glomar* policy is permissible." (Pl.'s Objs. at 3.) Plaintiff's objections argue that the standard of Nation Magazine v. U.S. Customs Service, 71 F.3d 885 (D.C. Cir. 1995) (quoting Landano v. United States, 508 U.S. 165, 176-80) (1993)) should apply here.

In Nation Magazine, a magazine challenged the United States Customs Service's *Glomar* response to a FOIA request that invoked Exemption 7(C). Exemption 7(C) allows an agency to withhold "investigatory records compiled for law enforcement purposes" to the extent that production of those records would "constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). While the court found the *Glomar* response in the case inappropriate, the court also noted that "an agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exception." Nation Magazine, 71 F.3d at 894, n.8 (internal

---

[1] As Judge Freeman explained in the Report, "[u]nder the so-called *Glomar* doctrine, an agency may refuse to confirm or deny the existence of records responsive to a FOIA request, if the existence or nonexistence of the requested records is itself a classified fact or exempt from disclosure under FOIA. (Report at 8.)

quotations omitted).

Landano, upon which Plaintiff also relies, held that the United States Government was not entitled to a presumption that all sources supplying information to the FBI in the course of a criminal investigation are confidential sources within the meaning of FOIA Exemption 7(D). 508 U.S. at 178-80. The case did not involve the use of a *Glomar* response.

Having reviewed de novo the applicability of Nation Magazine and Landano to the question of whether the CIA's *Glomar* policy is permissible, the Court agrees with Judge Freeman's finding that those cases are largely inapposite. Neither of those cases involved FOIA Exemptions 1 or 3, which are at issue here. Neither involved issues of national security. Moreover, neither involved the CIA, which has been recognized as enjoying a "near-blanket FOIA exemption." Hunt v. Central Intelligence Agency, 981 F.2d 1116, 1120 (9th Cir. 1992) ("If Congress did not intend to give the CIA a near-blanket FOIA exemption, it can take notice of the courts' incremental creation of one, and take the necessary legislative action to rectify the matter.") Accordingly, the Court adopts the Report's findings and recommendations as they pertain to the legal standard applicable to the CIA's *Glomar* policy.

5

IV. CIA's Position Concerning Scope of *Glomar* Policy

Plaintiff also objects to the Report because he claims it "credit[s] the CIA's arguments in reply instead of the agency's declaration with respect to the scope of the CIA's *Glomar* policy." (Pl.'s Objs. at 4.) Plaintiff contends that the CIA's *Glomar* policy, as applied to the requested records, is overbroad and violates FOIA. The declaration submitted in support of the CIA's Motion for Summary Judgment stated "the CIA must use [a *Glomar* response] with every requester seeking records on any foreign organization, including in those instances in which CIA does not actually hold records on the subject organization." (Pratzner Decl. at 10.) Plaintiff's Opposition to the CIA's Motion challenged that rule of exclusion as categorical. (Pl.'s Opp. Mem. at 4-6.) In reply, Defendant clarified that it "did not issue a *Glomar* response here merely because Plaintiff sought records relating to a foreign organization," but instead

> issued a *Glomar* response because (1) Plaintiff had requested records on a foreign organization for which the CIA had previously officially acknowledged possessing only two records; and (2) the CIA determined that, under the circumstances of this case, to disclose whether it possesses additional responsive records reasonably could be expected to result in harm that is cognizable under [Exemptions 1 and 3]. (Def. Reply Mem. at 13-14.)

Plaintiff contends that it was erroneous for the Report to note that the CIA "does not purport to advocate a categorical rule"

6

based on the information offered in its Reply Brief.

Plaintiff, however, offers no authority upon which he bases his objection. It is well recognized that courts have discretion to consider arguments raised for the first time in a reply brief. Ruggiero v. Warner-Lambert Co., 424 F.3d 249, 252 (2d Cir. 2005). However, the information provided by the CIA in its reply is not a new argument. Instead, the CIA simply clarified its position in reply to Plaintiff's arguments in his opposition brief. Plaintiff's objection to the Report's reference to Defendant's clarified position is unavailing. Accordingly, the Court adopts the Report's findings and recommendations as they pertain to the scope of the CIA's *Glomar* policy.

V. Justification for *Glomar* Response under Exemption 1

Plaintiff objects to the Report's finding that the CIA's *Glomar* response was justified under FOIA Exemption 1, which protects records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to [an] Executive order." 5 U.S.C. § 552(b)(1). Specifically, Plaintiff objects that the Report incorrectly determined that the fact of the existence or nonexistence of records about Opus Dei should not be

7

automatically declassified because it does not fall within any of the relevant exceptions. However, Plaintiff's objections merely reiterate the argument he made in support of partial summary judgment in his favor, and the Court accordingly conducts review for clear error. Indymac Bank, 2008 WL 4810043, at *1. As in his moving papers, he argues that (1) the existence or nonexistence of responsive records about Opus Dei is subject to automatic declassification because the records are over 25 years old, and (2) acknowledging the existence or nonexistence of such records would not harm national security.

1. Automatic Declassification

Plaintiff objects to the Report's determination that "the existence or nonexistence of old documents on Opus Dei is a fact that falls within one of the exceptions to automatic declassification under Executive Order 12,958, as amended." (Pl.'s Obj. At 6; Report at 22-23.) He objects to the Report's reliance on Section 3.3(b) of that Order, which exempts from automatic declassification any records that could be expected to (i) reveal an intelligence source; (ii) reveal application of an intelligence source or method; or (iii) reveal information that would seriously and demonstrably impact the United States' relationship with a foreign country. Plaintiff does not, however,

add any new evidence or arguments in support of this claim that would make it any more convincing than when it was first presented to, and rejected by, Judge Freeman. Plaintiff argues there is no reason to believe that disclosing the existence or nonexistence of records on Opus Dei would reveal an intelligence source, application of an intelligence method, or hinder foreign relations in any way. (Pl.'s Obj. at 6-8.)

As the CIA notes, disclosing the existence of additional records on Opus Dei "could prompt Opus Dei or a foreign intelligence service to undertake an effort to identify and neutralize CIA sources . . . [T]here is a reasonable possibility that such an effort would be successful." (Pratzner Suppl. Decl. at ¶ 6.) Similarly, revealing the existence of reports could indicate to a foreign intelligence service that CIA methods have been successful, which could in turn encourage efforts to uncover those methods. By contrast, revealing a lack of documents could verify for a foreign service that intelligence counter-measures have been successful. (Pratzner Suppl. Decl. at ¶¶ 6, 17-19.) The CIA also argues that revealing the existence of records on Opus Dei could lead governments where that organization operates to conclude that the CIA has been collecting information within its borders, or that one of its citizens has been recruited to help the CIA. This could reasonably be expected to impair

relations between the United States and the foreign government. (Pratzner Suppl. Decl. at ¶¶ 8, 32-33.) As Judge Freeman correctly explained, "even assuming that the facts of the documents' existence could be subject to automatic declassification under EO 12,958, the CIA has nonetheless provided declarations sufficient to show that the withheld information would qualify as an exception to automatic declassification." (Report at 24.) Plaintiff has not sufficiently challenged that showing. Accordingly, the Court adopts the Report's findings and recommendations as they pertain to the exceptions to automatic declassification.

2. Harm to National Security

Plaintiff also argues that the fact of the existence or nonexistence of records on Opus Dei was not properly classified in the first place because it was not reasonably likely at the time of classification to cause identifiable or describable harm to national security. (Pl.'s Obj. at 9; Pl. Motion for Partial Summ. Jmt. at 19-22; Pl. Reply at 5-8.) Accordingly, he objects to the Report because it "did not analyze with specificity each of the CIA's assertions of harm to national security before determining their plausibility." (Pl.'s Obj. at 8.)

Plaintiff's objection misses the mark, as did the arguments

10

in his moving papers concerning the implausibility of the harm to national security perceived by the CIA. The Report was not required to "analyze with specificity," (Pl.'s Obj. at 8), each assertion of harm to national security made by the CIA. Instead, an agency's "justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." Larson v. Dept. of State, 565 F.3d 857, 862 (D.C. Cir. 2009). The justification provided by the CIA here is sufficient. The Pratzner Declaration explains the potential damage to national security that could result from disclosing whether the CIA has additional documents on Opus Dei. The CIA asserts that the fact of whether and to what extent the CIA has gathered intelligence on a specific foreign organization would reveal the CIA's priorities and/or its capabilities. (Pratzner Decl. at ¶ 16; Report at 15.) A *Glomar* response is necessary, the CIA asserts, because any other response would deter and/or harm any current or potential future information sources, and could frustrate any effective and currently-employed methods of information gathering. (Pratzner Decl. at ¶¶ 18-20, 26-27; Report at 16-17.) Because "little proof or explanation is required beyond a plausible assertion that information is properly classified," Morley v. CIA, 508 F.2d 1109, 1124) (D.C. Cir. 2007), Plaintiff's arguments that the information was not properly classified are insufficient.

11

Accordingly, the Court adopts the Report's findings and recommendations as they pertain to the plausibility of the CIA's assertions of potential harm to national security.

VI. Failure to Reach Whether the CIA Properly Invoked the *Glomar* Doctrine Under Exemption 3

Finally, Plaintiff argues that the CIA cannot invoke the *Glomar* doctrine based on Exemption 3. He objects that Judge Freeman "determined that the CIA properly invoked the *Glomar* doctrine under Exemption 1, so she did not reach the CIA's alternative argument based on Exemption 3." (Pl.'s Obj. at 11.) The Court agrees with Judge Freeman that the CIA's invocation of the *Glomar* doctrine under Exemption 1 was proper, (supra at 7-12), and therefore declines to reach Plaintiff's argument regarding Exemption 3.

VII. Conclusion

Having conducted the appropriate levels of review of the Report and Recommendation of United States Magistrate Judge Debra C. Freeman dated February 28, 2012, this Court APPROVES, ADOPTS, and RATIFIES the Report in its entirety. Accordingly, Plaintiff's Motion for Partial Summary Judgment (Docket No. 23) is hereby DENIED, and Defendant's Motion for Summary Judgment (Docket No.

15) is hereby GRANTED.  The Clerk of Court is directed to close the docket in this case.

SO ORDERED.

Dated: March 29, 2012

New York, New York

*Deborah A. Batts*

DEBORAH A. BATTS
United States District Judge

13